UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN C., <br><br> Plaintiff, <br><br> v. <br><br> ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, dba ANTHEM BLUE CROSS, et al., <br><br> Defendants. | Case No. 2:22-cv-03647-FLA (AFMx) <br><br> **ORDER GRANTING AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. 79]** |

## **RULING**

Before the court is Defendant Directors Guild of America-Producer Health Plan's ("DGA") Motion for Summary Judgement ("Motion"), or in the alternative, Summary Adjudication. Dkt. 79 ("MSJ"). Defendant Anthem Blue Cross Life and Health Insurance Company ("Anthem") joins in the Motion. Dkt. 80.[1] For the reasons set forth below, the court GRANTS Defendants' Motion in part to the extent

---

[1] The court refers to DGA and Anthem collectively as "Defendants."

1

Plaintiff seeks removal of Anthem as Claim Administrator, and otherwise DENIES the Motion in its entirety.

## BACKGROUND

This matter arises from the denial of a request for benefits under a tax-exempt, multi-employer health plan (the "Plan"), governed under the terms of the Employee Retirement Income Security Act ("ERISA"). Relying on the administrative record, Dkt. 76, et seq. ("AR"), and the facts deemed undisputed by both parties, Dkt. 81-6 ("Pl. SGD"), the facts are as follows.

### A. The Plan

The healthcare plan at issue, which is governed by ERISA, provides medical, dental, and vision benefits for its participants and their covered dependents. Pl. SGD ¶¶ 1-2. The plan documents consist of the Summary Plan Description ("SPD") and DGA-Producer Pension and Health Plans Health Trust Agreement ("Trust Agreement"). *Id.* ¶ 3. Plaintiff Dan C. ("Plaintiff") is a participant in the Plan and his minor son, R.C., is a beneficiary as a member of his immediate family. *Id.* ¶¶ 25-26.

The Plan states, in relevant part, the Board of Trustees ("Trustees") "have sole, complete, and absolute discretionary authority to … make any and all findings of fact, constructions, interpretations and decisions relative to the [Plan], as well as to interpret any provisions of the [Plan]..." *Id.* ¶ 6. Accordingly, the Trustees are jointly responsible for interpreting the Plan provisions and establishing rules and regulations governing entitlement of benefits and administration of the Plan. *Id.* ¶ 5. The Trustees "may designate in writing persons who are not Trustees to carry out fiduciary or non-fiduciary responsibilities or duties of the Trustees." AR at 4271 (Dkt. 76-20 at 222). Anthem serves as Claim Administrator for certain services, including for residential treatment. Pl. SGD ¶ 7. For claim and appeal administration, the Plan relies on third-party medical reviewers, such as the Medical Review Institute of America ("MRIA"), to make decisions related to benefits determinations. *Id.* ¶ 16. Under the Plan, all approved treatment must be medically necessary. *Id.* ¶ 23.

Additionally, the Plan states the Trustees may establish committees, whose general purpose "is to study and debate issues that arise in the administration of the [Health Plan] and to make recommendations" to the Trustees. AR at 4273 (Dkt. 76-20 at 224). The Trustees may also "by resolution duly adopted, allocate and delegate to a committee the authority to take final action in specified areas; and in such instances the action of the committee shall have the same binding effect as action by the full Board" of Trustees. *Id.* The Plan establishes the Benefits Committee as one of several standing committees and states it has the authority and responsibility for "approving benefit awards, and hearing and determining claims appeals." *Id.* at 4274 (Dkt. 76-20 at 225).

### B. R.C.'s Medical History and Treatment

R.C. was born in Haiti and placed for adoption at an early age, following the death of his biological mother. Pl. SGD ¶ 29. Plaintiff adopted R.C., who joined Plaintiff's family in November 2013. *Id.* ¶ 30. R.C. was noted to exhibit explosive outbursts of anger toward his parents and siblings. *Id.* ¶ 31. In early 2015, R.C. was referred to Tracy Carlis, Ph.D., who diagnosed him with reactive attachment disorder. *Id.* ¶ 32. Thereafter, he was referred to Maureen Donley, who diagnosed him with developmental trauma. *Id.* ¶ 33. From 2016 to 2017, R.C. was treated by numerous mental health professionals for various behavioral issues. *Id.* ¶¶ 34-40. R.C.'s family was later urged to consult a psychiatrist for medical intervention, and began working with Dr. Phillips, who prescribed medication for anxiety, focus, and impulse control. *Id.* ¶¶ 35-36.

A few months later, R.C. and his family also began seeing and working with other medical professionals for treatment including behavioral therapy, social skills training, and neuropsychological training. *Id.* ¶¶ 37-39. R.C.'s diagnoses began to manifest as violent outbursts, in which he would often scream and break items, such as toys, glasses, and vases. *Id.* ¶ 42. In early 2020, R.C.'s teachers became increasingly concerned about his disruptive behavior at school. *Id.* ¶ 44. R.C.'s

parents subsequently began to search for new schools. *Id.* ¶ 46. His aggressive and violent behavior escalated, and his family explored residential treatment facilities. *Id.* ¶ 48.

On July 1, 2020, R.C. was admitted to Sandhill, a residential treatment center, for issues relating to emotional dysregulation, physical aggression, and low frustration tolerance. *Id.* ¶¶ 49-50. He was reported as lacking control of situations, leading to negative behaviors, such as screaming, breaking objects, slamming doors, engaging in self-deprecating comments, and becoming physically aggressive toward others. *Id.* ¶ 51. R.C. was eventually asked to leave Sandhill due to sexually inappropriate conduct with another boy at the facility, and Sandhill's inability to provide R.C. with a private room. *Id.* ¶ 53.

From August 4, 2020, to May 31, 2021, R.C. received residential care and attended school at Intermountain, a residential treatment facility in Montana. *Id.* ¶ 54. The administrative record includes Intermountain's daily report logs for R.C.'s stay, which include shift notes, information from therapy sessions, and treatment plans and notes. *Id.* ¶ 62.

### C. Denial of Benefits and Appeal

In August 2020, Anthem received a request for service at Intermountain for seven days, starting on August 4, 2020. AR at 8-10 (Dkt. 76-1 at 8-10). Anthem approved three of the requested days, from August 6 to 8, 2020, denying the remaining days as not medically necessary. *Id.* at 55. Anthem sent correspondence to Intermountain indicating a healthcare professional had reviewed the request and could not approve it because the Plan only covered care that was medically necessary. *Id.* at 67. The claim was reviewed by Dr. Prasad Reddy, M.D. *Id.* at 68.

Plaintiff appealed Anthem's decision, but Anthem upheld its denial of benefits. *Id.* at 69-70. As part of his appeal, Plaintiff attached medical necessity letters from various providers, psychological assessments, and various records from Intermountain. *Id.* at 76, 81. Anthem noted R.C. had been receiving residential care

because he had been at risk for serious harm without 24-hour care, but found such care was no longer necessary after he no longer presented such a risk, and wrote that R.C. could instead have been treated with outpatient services. *Id.* at 72-73. Anthem further noted its decision was based upon "MCG Guidelines Residential Behavioral Level of Care, Child or Adolescent." *Id.* at 75. Dr. Kayla Fisher, M.D., completed the review of the appeal. *Id.* at 74.

On June 7, 2021, Plaintiff appealed to the Directors Guild of America Appeals and Claim Managers ("DGA"), and provided the same materials he had given Anthem. *Id.* at 79-80. DGA requested MRIA review the appeal and specifically noted Plaintiff requested a medical reviewer certified in child and adolescent psychiatry, who had experience treating children with disruptive mood dysregulation disorder, relative attachment disorder, PTSD, ADHD, and other high-risk behaviors in an intermediate residential treatment center setting. *Id.* at 83-84. The appeal was reviewed on behalf of MRIA by Dr. William Holmes, M.D., who was board certified in General Psychiatry and Child and Adolescent Psychiatry. *Id.* at 85. Dr. Holmes noted the treatment was not consistent with generally accepted medical practice, ordered by an appropriate provider, consistent with professionally recognized standards of care, or the most appropriate treatment. *Id.* at 90. Accordingly, he concluded continued residential treatment was not medically necessary. *Id.* at 91. On June 24, 2021, Plaintiff was informed the claim remained denied, but that he could appeal further. *Id.* at 93.

On June 28, 2021, DGA received Plaintiff's second-level appeal, enclosing materials from prior reviews and additional medical records. *Id.* at 94. DGA again sent the file to MRIA for determination of medical necessity, and Dr. Holmes again reviewed the request. *Id.* at 96. In a report dated July 11, 2021, Dr. Holmes concluded the services were not medically necessary under the Plan's definition. *Id.* at 98.

///

### D. Procedural History

Plaintiff commenced this action on February 17, 2022, and filed the operative First Amended Complaint ("FAC") on March 28, 2022. Dkts. 1, 14. The FAC seeks relief for denial of benefits and breach of fiduciary duty, pursuant to sections 502(a)(1)(B) and 502(a)(3) of ERISA. *See* 29 U.S.C. § 1132(a)(1)(B), (a)(3).

DGA filed the instant Motion on May 5, 2023. Dkt. 79. Plaintiff filed his Opposition on May 19, 2023. Dkt. 81 ("Opp'n"). DGA filed a reply on May 26, 2023. Dkt. 82 ("Reply"). On June 5, 2023, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for June 9, 2023. Dkt. 83; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

## EVIDENTIARY OBJECTIONS

On a motion for summary judgment, the parties may only object to evidence if it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The parties advance several objections to the evidence submitted by their counterparts in connection with the Motion. Dkts. 81-6, 82-3. The parties object to evidence submitted on grounds including relevance, lack of foundation, and improper expert qualification. While the parties' objections may be cognizable at trial, on a motion for summary judgment, the court is concerned only with the admissibility of the relevant <u>facts</u> at trial, and not the <u>form</u> of these facts as presented in the motions. *See* Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment ("Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting."); *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."); *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not

1 necessarily have to produce evidence in a form that would be admissible at trial, as
2 long as the party satisfies the requirements of Federal Rule of Civil Procedure 56.").

3     Thus, to the extent the court relies upon evidence to which the parties object,
4 the objections are OVERRULED. To the extent the court does not, the objections are
5 DENIED as moot.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the opposing party must then set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248-49. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting

evidence presented by the moving party." T.*W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Inferences may be drawn from underlying facts that are either not in dispute or that may be resolved at trial in favor of the nonmoving party, but only if they are "rational" or "reasonable" and otherwise permissible under the governing substantive law. *Id.* The court must view all evidence and justifiable inferences "in the light most favorable to the nonmoving party." *Id.* at 630-31. However, a party cannot defeat summary judgment based solely on the allegations or denials of the pleadings, conclusory statements, or unsupported conjecture. *Hernandez v. Spacelabs Med.*, Inc., 343 F.3d 1107, 1112 (9th Cir. 2003); *see also FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

"After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f).

**II.    Analysis**

Defendants argue summary judgment should be entered on Plaintiff's section 502(a)(1)(B) claim for denial of benefits because treatment was not medically necessary, and on his section 502(a)(3) claim for breach of fiduciary duty because it is duplicative of the former.

**A.    Standard of Review**

As an initial matter, the parties debate the appropriate standard of review to be applied to this matter. The default standard of review for a denial of benefits claim under ERISA is de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "[F]or a plan to alter the standard of review from the default of de novo to the more lenient

abuse of discretion, the plan must unambiguously provide discretion to the administrator." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (*citing Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999)). The Ninth Circuit has held that "ERISA plans are insufficient to confer discretionary authority on the administrator when they do not grant any power to construe the terms of the plan." *Id.* at 964.

Accordingly, to determine the appropriate standard of review, the court must determine whether the Plan unambiguously grants "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *See Firestone*, 489 U.S. at 115. Otherwise, the court will apply the default de novo standard of review.

It is undisputed Anthem is the claim administrator for residential services whose eligibility determination is at issue. Pl. SGD ¶ 7. The Trust Agreement states, in relevant part, the Trustees "have sole, complete, and absolute discretionary authority to … make any and all findings of fact, constructions, interpretations and decisions relative to the [Plan], as well as to interpret any provisions of the [Plan]..." *Id.* ¶ 6. The Trust Agreement further states the Trustees "may designate in writing persons who are not Trustees to carry out fiduciary or non-fiduciary responsibilities or duties of the Trustees." AR at 4271 (Dkt. 76-20 at 222).

As Anthem made the eligibility determination at issue, *see* Pl. SGD ¶ 7, the relevant question is whether Anthem, not the Trustees, possessed the requisite discretion to warrant review under an abuse of discretion standard. *See Abatie*, 458 F.3d at 963. Defendants argue the Trustees vested Anthem with the discretionary authority to construe, interpret, and make decisions relating to the Plan. MSJ at 10. Defendants, however, do not identify any writing or other evidence that clearly establishes the Trustees vested Anthem, as the claim administrator, with discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See id.* at 10, 18-20, 25-26; Dkt. 82-3 ("Def. RSGD") ¶ 8; *see also* Reply at 8-9.

9

1 Defendants, thus, fail to demonstrate Anthem possessed the discretion required to alter
2 the standard of review from de novo to abuse of discretion. *See Abatie*, 458 F.3d at
3 963.
4       Similarly, it is undisputed the Benefits Committee denied Plaintiff's appeal of
5 Anthem's eligibility determination. Defendants argue the Benefits Committee was
6 granted plenary discretion to deny Plaintiff's appeal. MSJ at 24. Defendants,
7 however, similarly fail to demonstrate the Benefits Committee was granted
8 discretionary authority unambiguously to review and decide denial of claim appeals.
9 *See* MSJ at 24-26. Def. RSGD ¶¶ 11-12. The Trust Agreement allows the Trustees to
10 delegate to a committee the authority to take final action in certain areas *by resolution*
11 *duly adopted.* AR at 4273 (Dkt. 76-20 at 224). The Trust Agreement, however, only
12 establishes the Benefits Committee as a standing committee, with the responsibilities
13 of "approving benefit awards, and hearing and determining claims appeals." *Id.* at
14 4274. Absent evidence of a resolution or other writing explicitly conferring the
15 Benefits Committee with the authority to make final decisions on behalf of the
16 Trustees on denial of claim appeals, the court cannot conclude the Benefits Committee
17 possesses the requisite authority for a discretionary standard of review.
18       Accordingly, the court will apply the default standard of de novo review.

19     **B.**    **Medical Necessity**

20       The court next considers whether the evidence presented establishes a genuine
21 issue of fact as to whether R.C.'s requested treatment was medically necessary. Under
22 the Plan, a treatment or service is "medically necessary" when it is:

- Consistent with generally accepted medical practice within the medical community for the diagnosis or direct care of symptoms, sickness or injury of the patient, or for routine screening examination under wellness benefits, where and at the time the treatment, service or supply is rendered (the determination of "generally accepted medical practice" is the prerogative of the Health Plan through consultation

- with appropriate authoritative medical, surgical, or dental practitioners);
- Ordered by the attending licensed physician . . . and not solely for the convenience of the participant, his or her physician, Hospital or other care health provider;
- Consistent with professionally recognized standards of care in the medical community with respect to quality, frequency and duration; and
- The most appropriate and cost-efficient treatment service, or supply that can be safely provided, at the most cost-efficient and medically appropriate site and level of service.

Pl. SGD ¶ 24.

The administrative record contains evidence that, if credited, would support a finding that R.C.'s seven-day stay at Intermountain was medically necessary. For example:

1. Anthem's August 7, 2020, denial letter states, in relevant part: "The plan clinical criteria considers ongoing residential treatment medically necessary for those who are a danger to themselves or others…. This service can also be medically necessary for those who have a mental health condition that is causing serious problems with functioning. (For example, being impulsive or abusive, very poor self care…)." Def. RSGD ¶ 117.

2. An Intermountain treatment note from September 20, 2020 states: "A peer in the cottage made a noise and [R.C.] started to holler out at the peer. Sammie redirected [R.C.] to not pay attention to the other kids. [R.C.] was focused on trying to figure out who it was …[R.C.] seemed focused on the noise and who made it and started saying he was going to "kill everyone in the cottage" that he would "stab them all with a knife, including whoever made that noise" [R.C.] then stated "MH made that noise and I am going to stab him in the heart with a knife." Pl. SGD ¶ 163 (brackets in original); AR at 116 (Dkt. 76-1 at 116).

3. Intermountain's notes from its 90-day review of R.C.'s treatment from September 30, 2020, to December 16, 2020, state R.C. has "become unsafe at time [*sic*] and needed to be physically restrained," "urinated on the bathroom floor," engaged in two sexualized behaviors, and required nine physical interventions. AR at 984-93 (Dkt. 76-6 at 157-66).

11

4. Plaintiff received, and included in his appeal letter, at least five letters of medical necessity from R.C.'s previous therapists and treatment providers.  Pl. SGD ¶ 81.

Likewise, the administrative record contains evidence that, if credited, would support a finding that a seven-day stay at a residential facility was not the most appropriate and cost-efficient treatment, as required to be deemed medically necessary.  For example:

1. None of the providers who issued letters of medical necessity examined R.C. during his stay at Intermountain.  Pl. SGD ¶ 82.

2. Dr. Kayla Fisher, board certified in psychiatry with a specialty in child and adolescent psychiatry, stated that a review of R.C's "entire case file … includ[ing] the additional 2353 pages [his] parents" submitted, indicated R.C. did not meet the criteria for 24-hour care after his initial 3-day treatment and could have been treated with outpatient services.  AR at 25-27 (Dkt. 76-1 at 25-27).

3. Relying on the Disruptive Mood Dysregulations Disorder, DSM-5 and Residential Behavioral Health Level of Care, Child or Adolescent, 25th Edition, Dr. William Holmes observed that by August 7, 2020, R.C. did not present an ongoing risk of harm to self or others, and noted that R.C.'s need for frequent redirections did not require 24-hour monitoring.  Pl. SGD ¶¶ 87-88, 92.

4. Intermountain records from the relevant time period indicated R.C. "tolerated adult support and also accepted routines," "show[ed] some high energy here and there but mostly looks like just dancing," "had a good first day of school," and "assimilated into the classroom just fine and we have not seen any major concerns or behaviors yet out of him."  AR at 2134, 2176 (Dkt. 76-7 at 728, 770).

Where, as here, a district court reviews *de novo* a claim for denial of benefits, it may not weigh evidence when considering a motion for summary judgment.  *See Anderson*, 477 U.S. at 248; *Kearney*, 175 F.3d at 1095-96 (reversing summary judgment on ERISA claim for denial of benefits where triable issues of fact existed and remanding with instructions to make findings under Fed. R. Civ. P. 52(a)).  The court, therefore, finds summary judgment is not appropriate on the issue of medical necessity.

12

### C. 502(a)(3) Claim for Breach of Fiduciary Duty

Defendants next argue they are entitled to summary judgment on Plaintiff's section 502(a)(3) claim for breach of fiduciary duty because it is duplicative of his section 502(a)(1)(B) claim for denial of benefits. MSJ at 26. The Ninth Circuit has established that at the summary judgment stage, a plaintiff may proceed with simultaneous claims under Sections [502](a)(1)(B) and (a)(3). *See Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 961 (9th Cir. 2016) ("Appellants seek the payment of benefits under § [502](a)(1)(B), but if that fails, Appellants seek an equitable remedy for the breach of fiduciary duty to disclose under § [502](a)(3). This is permitted…"); *see also Zisk v. Gannett Co. Income Prot. Plan*, 73 F. Supp. 3d 1115, 1118 (N.D. Cal. 2014) ("Courts of this district have found that (a)(3) claims remain viable even when an (a)(1)(B) claim is asserted, particularly where the relief sought in connection with each claim is distinct.").

Defendants' reliance on *Castillo* is inapposite. There, the Ninth Circuit specifically held that, under *Moyle*, claims under sections 502(a)(1)(b) and (a)(3) "may proceed simultaneously so long as there is no double recovery." *Castillo v. Metro Life Ins. Co.*, 970 F.3d 1224, 1229 (9th Cir. 2020) (*citing Moyle*, 823 F.3d at 961). *Castillo* stands only for the proposition that a claimant may not bring a claim for denial of benefits under §502(a)(3) when a claim under §502(a)(1)(B) will afford adequate relief. *Id.* Here, Plaintiff's Complaint not only seeks compensatory benefits resulting from Anthem's denial, but also seeks separate and distinct equitable relief resulting from Defendants' alleged breach of fiduciary duty, including an order that Defendants cease to use their current level of care guidelines to evaluate claims involving mental health treatment, use publicly available level of care guidelines, and provide copies of all level of care guidelines relied upon to claimants whose claims are denied. Compl. ¶¶ 60-62.

Defendants do not challenge the existence of a genuine issue of material fact, but rather argue only that, as a matter of law, "Plaintiff's requested relief…is not

appropriate under § 502(a)(3)." MSJ at 27. Having found Plaintiff's claim viable at this stage of the proceedings, the court declines to enter summary judgment on this issue.

To the extent Plaintiff seeks removal of Anthem as Claim Administrator, the court agrees with Defendants that such relief is precluded by Ninth Circuit precedent. *See Wise v. Verizon Communications, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) ("Because removal of the ERISA fiduciary is an available remedy under §§ 1109(a) and 1132(a)(2), [Plaintiff] may not resort to [§ 502(a)(3)] to seek the same relief."). The court, therefore, grants summary judgment as to this request for relief alone.

Finally, Defendants argue Plaintiff lacks standing to bring his breach of fiduciary duty claim. MSJ at 28. Standing requires that a plaintiff must have suffered an injury in fact, that is fairly traceable to the challenged conduct of the defendant, and that is likely to be redressed by a favorable judicial decision. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Defendants state summarily, "Plaintiff cannot show that any fiduciary breach caused them concrete harm. On the contrary, the Benefits Committee carefully reviewed Plaintiff's appeal and upheld the appeal based upon review of all documents and evidence submitted, including relying upon the medical opinions of the [MRIA and Anthem medical reviewers]." MSJ at 28. The court is not persuaded. Plaintiff disputes the Benefit Committee's qualifications and its review of the appeal, and clearly asserts financial and other resulting harm. Opp'n at 22; Compl. ¶¶ 36; 55. Viewing the administrative record and evidence in the light most favorable to Plaintiff, the court finds summary judgment is not appropriate on this issue.

/ / /

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, the court GRANTS Defendants' Motion in part to the extent Plaintiff seeks removal of Anthem as Claim Administrator, and otherwise DENIES the Motion in its entirety.

IT IS SO ORDERED.

Dated: October 27, 2023

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge